United States District Court
Southern District of Texas
**ENTERED**
July 11, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Wendell Smith, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. H-18-2490 |
| | § | |
| Nancy A. Berryhill, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration | § | |
| *Defendant*. | § | |

# MEMORANDUM AND RECOMMENDATION

Wendell Smith appeals the Commissioner's final decision denying his application for social security benefits. (D.E. 1.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 10) and Defendant's Cross-Motion for Summary Judgment. (D.E. 11.) The court recommends that the final decision of the Commissioner be **AFFIRMED** and this case be **DISMISSED** with prejudice.

### 1. Procedural Posture

Smith applied for disability insurance benefits on May 6, 2015. (Tr. 179.) He claimed that he was disabled due to physical and mental limitations with an alleged disability onset date of October 10, 2014. (Tr. 217–18.) In his application, Smith stated that he was born in 1961 and worked as a truck driver until he became

disabled. (Tr. 179, 219.) The Social Security Administration (SSA) denied Smith's application. (Tr. 78–79.) Smith filed a request for reconsideration, but the SSA again denied his application. (*See* Tr. 90–91.)

On July 21, 2017, an administrative hearing was held. (*See* Tr. 32.) ALJ Gary J. Suttles issued a decision on August 23, 2017, finding Smith not disabled. (Tr. 15–27.) Smith appealed. The Appeals Council denied Smith's request for review on November 7, 2017. (Tr. 1–5.) Smith filed this complaint in federal court to appeal the Commissioner's final decision. (D.E. 1.)

## 2.  Legal Standards

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

### A. Five-step analysis

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. 20 C.F.R. § 404.1520 (2017). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that

the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2017). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ must decide whether the claimant's impairment is severe. 20 C.F.R. § 404.1520(c) (2017). A person who does not have a "severe impairment" is not disabled. *Wren*, 925 F.2d at 125. An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

Once the ALJ finds that the claimant has a severe impairment, the ALJ must determine, at step three, if the impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d); *see* Listing of Impairments at 20 C.F.R. Part 404, Subpt. P, App. 1. All relevant evidence in the claimant's case record is considered. 20 C.F.R. §§ 404.1526(c), 416.926(c) (2017). If the requirements of a listing are met, the individual will be considered disabled. *Id.*

When the claimant's impairments do not meet or equal a listed impairment, the ALJ must proceed to assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)). To assess the RFC, the ALJ must consider all medically determinable impairments, including those not labeled severe at step two. 20 C.F.R. § 416.945(a)(2); Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *5.

The RFC is used to determine whether the claimant can perform past relevant work at step four. *Id*. If the claimant is capable of performing the work the claimant has done in the past, the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the ALJ finds that the claimant's RFC precludes the claimant from performing past relevant work, the ALJ must proceed to step five. 20 C.F.R. § 404.1520(g)(1). At this step, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Id.*

### B. Standard of review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and

whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to examine the record as a whole to determine whether substantial evidence supported the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. The ALJ's Decision and the Administrative Records

#### A. Hearing

The ALJ held a hearing on July 21, 2017. (Tr. 34.) Smith and a vocational expert testified. Smith testified that he lost his job as a truck driver because he could not pass a physical examination due to his diminished eyesight, inability to lift objects, and pain in his feet and back. (Tr. 37, 55.) He testified that he was on medication to treat diabetes. (Tr. 37–38.) Other physical conditions relevant to Smith's alleged disability included neuropathy, sleep apnea, and hypertension. (Tr. 57.) Smith testified that he experienced pain with ten minutes of sitting and twenty or twenty-five minutes of walking. (Tr. 54.)

Smith testified that he received mental health treatment two years before the hearing when he had insurance. (Tr. 41.) Smith testified that he only took mental health medications for a month, when he had a prescription. *Id.* Smith testified that he could not get the prescription refilled due to lack of finances. *Id.*

The ALJ asked Smith about his history of cocaine and marijuana use, which was documented in his medical records. (Tr. 49; *See* Tr. 429.) Smith denied using either cocaine or marijuana during the relevant period. (*See* Tr. 49–50.) Smith testified that he regularly drank whiskey. (Tr. 58, 61.) He testified that his wife brought him two bottles of whiskey a week for the previous two years. (Tr. 61.) Smith denied an alcohol problem. (Tr. 62.)

The ALJ asked Smith about his monthly expenses, and Smith testified that his wife's annual income of $30,000–35,000 was his only source of income. (Tr. 45.) Smith could not answer most questions about his monthly expenses and stated that his wife managed all finances. (*See* Tr. 45–47.)

As to activities of daily living, Smith testified that he read the newspaper and watched television at home. He had no hobbies. (Tr. 51–52.) He denied having any social engagements and did not know how to use a computer. (Tr. 52.)

The ALJ asked the VE what a person with the following RFC could perform:

> an individual closely approaching advanced age, and an individual of advanced age, I'm going to put him at medium, 50 occasionally and 25 frequently; sit/stand/walk six of eight in an eight-hour day. Push/pull unlimited. He can climb stairs. No ladders, ropes, scaffolds, or running. He can bend, stoop, crouch, crawl, balance, stoop, and squat. He has the ability to get along with others. He can understand at least detailed instruction, concentrate and perform detailed tasks, and respond and adapt to workplace changes and supervision.

(Tr. 63.) The VE testified that a person with that RFC could do Smith's past work as a truck driver. *Id*. The VE also testified that someone with a similar RFC who could only do light work could not work as a truck driver but could work as an office helper, mail clerk, or a delivery driver driving a four-wheel vehicle. (Tr. 63–64.)

Smith's attorney modified the ALJ's first hypothetical to reflect a need to alternate between sitting and standing every thirty minutes, have close access to a restroom, or be off-task 20% or more of the time. (Tr. 65–66.) The VE testified that with any of those conditions a person could not work as a truck driver.  (Tr. 66–67.)

### B. ALJ's decision

The ALJ issued his decision on August 23, 2017. (Tr. 15–27.) At step one, the ALJ found that Smith had not engaged in any substantial gainful activity since October 1, 2014. (Tr. 17.) At step two, the ALJ found that Smith had severe impairments including diabetes mellitus, gout, osteoarthritis, neuropathy, depression, alcohol abuse, and sleep apnea. *Id.* The ALJ found that there was no evidence that Smith's vision impairments caused him functional limitations for a consecutive twelve-month period. *Id.*

At step three, the ALJ found that none of Smith's impairments was medically equivalent to a listing. (Tr. 18–19.) Before reaching steps four and five,

the ALJ determined that Smith had the RFC to perform medium work with some restrictions:

> the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the ability to occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds and sit, stand and walk six of 8 hours each for a full 8 hour workday. His push/pull ability and gross/fine dexterity functioning is unlimited. He can occasionally climb stairs but is unable to climb ladders/ropes/scaffolds or run. He can bend, stoop, crouch, crawl, balance, twist, and squat. He gets along with others, understands detailed instructions, concentrates and performs detailed tasks, responds and adapts to workplace changes and supervision.

(Tr. 19.)

At step four, the ALJ found that Smith could perform his past relevant work as a truck driver. (Tr. 25)

The ALJ proceeded to step five and made an alternate finding that Smith could perform other jobs in the national economy as a delivery driver, mail clerk, and office helper. (Tr. 25–27.)

### 4. Analysis

### A. The ALJ did not reversibly err at step two.

Smith claims that the ALJ erred at step two in finding that Smith's vision impairments were non-severe. Assuming without deciding that the ALJ erred in so finding, any error at step two does not constitute reversible error if the ALJ conducts the remaining steps of the five-step sequential analysis. *See Groberg v.*

8

*Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011) ("The real problem occurs later in the analysis, where the ALJ is required to consider the effect of all medically determinable impairments, severe or not, in calculating the claimant's RFC.").

Here, the ALJ completed all five steps of the disability determination, and considered Smith's vision impairments in the process. The ALJ reviewed Smith's Snellen vision examination results and diagnosis of glaucoma. (*See* Tr. 22–23; Tr. 384, 455.) After considering these records the ALJ found that Smith's limitations in sensory functioning "have been largely unremarkable." (*See* Tr. 23.)

Had the ALJ found the effect of Smith's vision impairments to be severe, he would still have proceeded to the RFC analysis and reached the same conclusion. Therefore, even if the ALJ made any error at step two, the error would be harmless.

### B. The ALJ did not err in considering Smith's alcohol consumption.

Smith claims that the ALJ erred when he considered Smith's alcohol consumption in the five-step analysis. Smith incorrectly states that an ALJ may not consider the claimant's evidence of alcohol use. Alcoholism is frequently diagnosed and treated as a medical condition. In fact, substance abuse disorders can be presumptively disabling. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.09 (2017). Where, as here, objective medical records show the claimant's health is

impacted by alcohol use, an ALJ's disability determination would be incomplete without consideration of the claimant's use of alcohol.

To the extent that Smith claims the manner in which the ALJ considered evidence of his alcohol use was contrary to law, his claim is meritless. Smith relies on the Contract with America Advancement Act ("CAAA"), Pub. L. No. 104-121, § 105, 110 Stat. 847, 852–55 (1996) (codified as amended at 42 U.S.C. § 423(d)(2)(C) (1996)), and its implementing regulations, 20 CFR §§ 404.1535, 416.935 (2017), which requires the Commissioner to deny benefits if alcoholism or drug addiction would "be a contributing factor material to the Commissioner's determination that the individual is disabled." *See* 42 U.S.C. § 1382c(a)(3)(J); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

The CAAA and its implementing regulations do not forbid consideration of alcohol use in the five-step analysis. The regulations merely permit the Commissioner to use medical evidence of drug and addiction to deny benefits to a person who has been found disabled. *See* 20 C.F.R. §§ 404.1534, 416.935 (2017); *see also Fastner v. Barnhart*, 324 F.3d 981, 986 (8th Cir. 2003) (holding that an analysis under the CAAA and its implementing regulations "is only necessary if the ALJ has found that the sum of that individual's impairments would otherwise amount to a finding of disability").

Moreover, the ALJ considered Smith's alcohol use as evidence that he was not complying with medical advice. (*See* Tr. 20, 24; *see also* Tr. 462, 473.) He also cited alcohol use as evidence that Smith had chosen to spend money on alcohol instead of health insurance. (*See* Tr. 20.) The ALJ did not use Smith's alcohol use directly as a reason to deny benefits.

### C. The ALJ did not commit reversible error at step three.

Smith argues that the ALJ erred at step three in finding that his mental impairments do not meet the requirements of Listing § 12.04 (affective disorders). At step three, "the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). Each listing contains multiple paragraphs of criteria. If the claimant's impairments match or are equivalent to the criteria in one of the listed impairments, he is "conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

The claimant bears the burden of establishing that his impairment meets or equals the criteria for presumptive disability described in the listings. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original); *see also Falco v. Shalala*, 27 F.3d

160, 162 (5th Cir. 1994) (The criteria in the Listings are "demanding and stringent").

Here, substantial evidence supported the ALJ's determination that Smith was not presumptively disabled under Listing §12.04 (affective disorders). To meet Listing § 12.04, a claimant must show that he meets either paragraphs "A" and "B", or paragraphs "A" and "C" under the listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 (2017) ("Listing § 12.04"); *see also* 20 C.F.R. § 404.1520a(c)(3) (2017). Paragraph "A" criteria require medical documentation of either depressive disorder or bipolar disorder. Listing § 12.04(A). Paragraph "B" criteria require that the claimant suffer from an impairment or combination of impairments

> [r]esulting in at least two of the following:
> 1.  Marked restriction of activities of daily living; or
> 2.  Marked difficulties in maintaining social function; or
> 3.  Marked difficulties in maintaining concentration, persistence, or pace; or
> 4.  Repeated episodes of decompensation, each of extended duration.

Listing § 12.04(B). The term "marked" means "more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (2017). Paragraph "C" criteria require that the mental disorder is serious and persistent. *See* Listing § 12.04(C).

No treating doctor gave an opinion as to whether Smith met Listing § 12.04. An agency reviewing psychologist, Dr. Germain, reviewed Smith's records on

November 23, 2015. (*See* Tr. 85–86; D.E. 7-4 at 1.) Dr. Germain found that Smith did not meet the paragraph "B" criteria because he had only mild restriction of activities of daily living, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (Tr. 85.) Dr. Germain also found that Smith did not meet the paragraph "C" criteria. (Tr. 86.)

The treating doctors consistently found that Smith maintained a cooperative and forthcoming attitude with good eye contact, and exhibited good or intact insight, judgment, cognition, and impulse control. (*See* Tr. 447–48, 463, 473.) Smith reported that he performed all activities of daily living by himself. (Tr. 446.) These records further support the finding that Smith's mental impairments did not meet the requirements of Listing § 12.04.

The ALJ's separate finding that Smith's mental RFC did not restrict his ability to work further supports the denial of presumed disability under Listing § 12.04. *See infra* part 4.D.; *see also, e.g.*, *Vasquez v. Comm'r of Soc. Sec. Admin.*, Civ. A. No. SA-18-218-XR, 2019 WL 1313461, at *10 (W.D. Tex. Feb. 4, 2019) (an ALJ's analysis of the claimant's mental RFC supported the finding at step three that the plaintiff did not meet the listed impairment).

Smith argues that the ALJ's findings at step three are undermined by his misreading of the record. It appears that the ALJ misinterpreted the consultative

examiner, Dr. Karim's report as stating that Smith "is able to learn, recall, and use information as evidenced by his ability to follow spoken instructions during consultative evaluation," (Tr. 18) but it is not apparent that Dr. Karim required Smith to follow any spoken instructions. (*See* Tr. 382–89.) The ALJ also cited Dr. Karim as saying that Smith "reported that he has friends and was socially appropriate during consultative evaluation," (Tr. 18) but Dr. Karim does not mention Smith having any friends. (*See* Tr. 382–89.) In a function report dated October 2015, Smith's wife reported that he had no friends. (Tr. 269.) The ALJ considered Smith's own function report as proof that Smith "is able to interact appropriately with others while shopping in stores and daily with family members." (Tr. 18.) But the function report stated nothing about Smith interacting appropriately with others. It actually stated that Smith gets angry and is unable to hold a calm conversation in his interactions with family members. (*See* Tr. 268–69.) Finally, the ALJ interpreted Smith's function report as stating that he is able to maintain sufficient concentration to prepare simple meals, read, and follow television plots. (Tr. 18.) The report states only that Smith tries to read and watch TV but his vision is deteriorating. (Tr. 241.) It states that Smith microwaves food, and prepares sandwiches, which is not indicative of Smith's ability to concentrate in a work setting. (*See* Tr. 239.) The court agrees with Smith that the ALJ should have taken more care in making his fact findings.

An ALJ's imperfect analysis at step three is subject to a harmless error analysis. *See Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007) (the ALJ's bare conclusion that the claimant did not meet a listed impairment was subject to harmless error review); *see also Dise v. Colvin*, 630 F. App'x 322, 324–25 (5th Cir. 2015) (any error by the ALJ in discussing a potentially applicable listing was harmless). In conducting the harmless error analysis at step three, "the sole question . . . is whether substantial evidence supports the ALJ's finding." *See Bullock v. Astrue*, 277 F. App'x 325, 327–28 (5th Cir. 2007). Reversal is required only if the claimant demonstrates that he meets or appears to meet the listing at issue. *See Vasquez*, 2019 WL 1313461, at *7. For example, in *Audler*, the court reversed and remanded for further proceedings at step three because the claimant's treating doctor provided a checklist opinion indicating that she had most symptoms of a listed impairment, and no medical evidence contradicted the treating doctor's opinion. *Audler*, 501 F.3d at 449. Unlike the claimant in *Audler*, Smith has not shown any evidence which supports the finding of presumptive disability. Thus, while the ALJ misconstrued parts of the record, substantial evidence nevertheless supports the ALJ's decision. Remand is therefore inappropriate.

**D. The ALJ committed no error in determining Smith's RFC.**

    **i.  Substantial evidence supports the ALJ's RFC determination.**

Smith argues that the ALJ's RFC determination as to his mental impairments is not supported by substantial evidence. The court's own review of the record shows that the ALJ's RFC determination is supported by substantial evidence.

In determining whether substantial evidence supports the ALJ's decision, the court "does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton*, 209 F.3d at 452. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.*

Where the claimant suffers from mental impairments, the ALJ's RFC analysis must consider the claimant's ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, co-workers, and work pressures in a work setting. Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *3–4 (RFC must incorporate factors listed in 20 C.F.R. §§ 404.1545(c), 416.945(c)) (2016); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (holding that Soc. Sec. Rul. 96–8p provides guidance to the district courts).

The ALJ found that Smith has the mental RFC to get along with others, understand detailed instructions, concentrate and perform detailed tasks, respond and adapt to workplace changes and supervision. (Tr. 19.) No treating doctor gave an opinion about Smith's ability to perform functional activities. The ALJ

16

considered objective medical records, an opinion from Dr. Germain, and Smith's subjective reports of his symptoms. Dr. Germain found that Smith's affective disorder did not cause non-exertional limitations in his RFC, finding that Smith "would not be wholly compromised in ability to function in a work setting; consistent with non-severe." (Tr. 86.) Dr. Germain also found that Smith had only mild restriction of activities of daily living, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (Tr. 85.) The ALJ gave some weight to Dr. Germain's opinion but concluded that Smith's mental RFC was even more limited than Dr. Germain opined. (Tr. 24.) The ALJ discounted Smith's self-reported symptoms, including the function report completed by his wife, because of his history of noncompliance with medical treatment. (Tr. 20, 24.)

The ALJ considered Smith's entire medical record for the period starting in August 2015, and ending in July 2016. (*See* Tr. 21–23.) This included a twenty-five minute psychiatric diagnostic evaluation in October 2015 (Tr. 353), psychotherapy appointments in November and December of 2015 (Tr. 462, 473), and initial assessments and a follow-up by a psychiatrist, Dr. Xu, in May and July of 2016. (Tr. 431, 448.) In-person examination notes by Smith's healthcare providers consistently noted that Smith maintained a cooperative and forthcoming attitude with good eye contact, and exhibited good or intact insight, judgment,

cognition, and impulse control. (*See* Tr. 447–48, 463, 473.) Dr. Xu diagnosed Smith with alcohol induced bipolar disorder, alcohol induced psychotic disorder, chronic alcohol use, cognitive disorder, and dementia likely secondary to alcohol use. (Tr. 448.) The ALJ gave little weight to Dr. Xu's diagnoses, however, because he found that they "were based on the claimant's subjective complaints and there is no evidence other than the single assessment to support these diagnoses." (Tr. 22.)

The ALJ's reasonable inference that many of Smith's symptoms were due to his noncompliance with treatment plans supports his rejection of Dr. Xu's diagnoses. *See* 20 C.F.R. § 404.1530(b) (2017) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled."). Doctors ordered Smith to control his alcohol intake throughout his treatment period. (*See, e.g.*, Tr. 462, 466, 473.) But not once during the year-long treatment did Smith report that he followed the doctors' orders. (*See, e.g.*, Tr. 353, 431, 448, 466, 473.) In addition, Smith was not compliant with his prescribed medication such as Zoloft. (*See, e.g.*, Tr. 343, 466.) Smith admitted at the hearing that he only took mental health medications for a month. (Tr. 41.) Based on these records, the ALJ was reasonable in assigning little weight to Dr. Xu's diagnoses of alcohol-induced disorders.

Smith argues that the ALJ did not consider all the relevant evidence. For example, Smith claims that the ALJ overlooked his PHQ 9 score, GAF score, and

an episode involving the police on November 4, 2015, where Smith reportedly had an outburst of anger. (*See* Tr. 431, 462, 473, 476.) However, the fact that the ALJ omitted certain records in his written decision does not mean the ALJ failed to consider them. *See Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010). Under the substantial evidence standard of review, the court may not reverse the ALJ's decision simply because there are alternative ways to interpret a medical record. *Newton*, 209 F.3d at 452 (holding that conflicts in the evidence are solely reserved to the administrative body). Here, the ALJ considered the entire medical record. The ALJ complied with the requirement that he consider all relevant medical impairments to assess Smith's RFC as it relates to his mental impairments. *See* 20 C.F.R. §§ 416.945(a)(2), 416.920(e) (2017); Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *5.

### ii. The ALJ did not err in considering Smith's non-compliance with prescribed treatment.

Smith argues that the ALJ erred by not giving consideration to his mental impairments and inability to afford health insurance in reviewing evidence of non-compliance. Smith does not dispute that he was not compliant with the prescribed medication and instructions to control his alcohol intake, which is evident in his medical records. (*See, e.g.*, Tr. 321, 324, 330, 367, 413, 462, 467, 473.) Instead, Smith argues that the ALJ should have considered his mental illness and lack of

financial means as an acceptable reason for failing to follow treatment, pursuant to 20 C.F.R. § 404.1530 (2017).

The cited regulation states that a claimant's failure to follow prescribed treatment can be cause to find the claimant ineligible for disability benefits. *See* 20 C.F.R. § 404.1530(b) (2017) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled."). Acceptable reasons for failing to follow prescribed treatment include mental limitations. *See* 20 C.F.R. § 404.1530(c) (2017). Social Security Ruling 16–3P on credibility determination requires an ALJ to review the "possible reasons [the claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints," including financial limitations. *See* SSR 16–3P, 2017 WL 5180304, at *9–10. However, the Ruling leaves the ultimate credibility determination to the ALJ's discretion. *See id*.

Here, the ALJ expressly considered Smith's testimony that he could not afford health insurance through his wife's employer, which would have cost him $300 a month. (*See* Tr. 23–24, 38–39.) The ALJ did not find this reason credible because of Smith's regular and costly alcohol consumption. (*See* Tr. 20.) The ALJ complied with SSR 16–3P's requirements in considering whether Smith's lack of finances led to his noncompliance. The ultimate credibility determination was within the ALJ's discretion. *See* SSR 16–3P, 2017 WL 5180304, at *9–10.

Smith relies on *Brashears v. Apfel*, 73 F. Supp. 2d 648 (W.D. La. 1999) to argue that the ALJ erred by not considering Smith's mental limitations as an explanation for his failure to follow prescribed treatment. In *Brashears*, the court remanded the case in light of "new and material" evidence consisting of letters from the plaintiff's psychiatrist and social worker which showed that the plaintiff became non-compliant with medication as her psychotic symptoms worsened. *Id.* at 650–51. *Brashears* is distinguishable because here, no medical record indicates that Smith's noncompliance was attributable to his mental illness.

Smith argues that the record of Smith storming out of a consultative examiner's office on August 12, 2015, is evidence that his mental illness prevents him from seeking medical treatment. This does not show that Smith's noncompliance was due to his mental illness. The record actually stated:

> [Smith] came for disability evaluation but stormed out of the room causing [sic] me out, stating I was the reason he did not get his disability based on the examination I did about a year ago. He stated he will not let me examine him again and was very belligerent and confrontational despite being begged by his wife to complete the examination. He refused; the examination has to be terminated.

(*See* Tr. 332.) The record at best shows that Smith expressed his anger towards a particular consultative examiner. That is insufficient to constitute evidence that Smith's mental illness caused his non-compliance with medical treatment.

### iii. The ALJ was not obligated to order a consultative examination or assign different weight to treating source evidence.

Smith argues that the ALJ only relied on "one single medical opinion" of Dr. Germain in determining his RFC. Smith claims that it is unclear what formed the basis of the ALJ's mental RFC because the ALJ assigned little weight to Dr. Germain but gave great weight to Dr. Rowland, an agency physician. Smith appears to argue that the ALJ should have placed more weight on Dr. Xu's diagnoses or obtained a consultative examination, which would have shown that he has moderate limitations in his mental RFC.

The ALJ did not err in assigning little weight to Dr. Xu's diagnoses. An ALJ is free to reject the opinion of any physician—even that of a treating physician—when the evidence is lacking or supports a contrary conclusion. *See Newton*, 209 F.3d 448, 455–56 (5th Cir. 2000); *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005). Here, the ALJ reviewed Dr. Xu's psychiatric evaluation in May 2016, which diagnosed Smith with several alcohol-induced mental impairments. (*See* Tr. 22; Tr. 431, 448.) The ALJ gave Dr. Xu's diagnoses little weight, finding that Dr. Xu made the diagnoses on Smith's subjective complaints and that the medical records did not support the diagnoses. (Tr. 22; *see* Tr. 445–49.) The ALJ expressly considered and explained Smith's medical records, including Smith's psychological evaluation (Tr. 21–22; *see* Tr. 353–55) and Smith's follow-up sessions from November 2015, to July 2016. (Tr. 22; *see* Tr. 428–32, 462–63, 467,

472–75.) Further, the ALJ found that Smith's noncompliance with treatment plans provided a reason to find his condition not disabling. *See supra* part 4.D.i–ii.

The ALJ was not obligated to order a consultative examination. Although the Commissioner has the duty to develop the facts relative to a claim for disability benefits, *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000), "the determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). Consequently, the ALJ has the authority to interpret the medical evidence. *Id.* As discussed above, Smith's medical records provided substantial evidence to support the RFC determination. *See supra* part 4.D.i. Smith's treating doctors gave no opinions on his RFC. In that context, the ALJ considered the medical records and Dr. Germain's opinion to determine Smith's mental RFC. (*See* Tr. 23; Tr. 85.) The ALJ made no error.

### E. The ALJ's alleged bias did not cause reversible error.

Smith argues that the ALJ exhibited bias against him, which made the ALJ unable to render a fair decision. Smith claims that the ALJ's inquiry into Smith's finances, including the use of family car, was irrelevant to the disability determination. Smith also argues that throughout the disability hearing the ALJ communicated with Smith using hostile tone and demeanor. Smith argues that the ALJ harassed him over Smith's inability to remember answers to certain questions,

including about Smith's former drug use and treatment of his eye impairment. Last, Smith argues that the ALJ denies Smith had any mental impairment.

"[T]he burden of establishing a disqualifying interest [of an ALJ] is upon the person making the contention." *West v. Astrue*, Civ. A. No. 5:07-133 (CAR), 2008 WL 2024963, at *9 (M.D. Ga. May 8, 2008). Remarks "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *See Liteky v. United States*, 510 U.S. 540, 555 (1994). Instead, there must be a showing that the judge exhibited "such a high degree of favoritism or antagonism as to make fair judgment impossible" or "an opinion that derives from an extrajudicial source." *See id.*

Here, there was no such showing. Although Smith challenges the ALJ's questioning about his monthly expenses, Smith's finances were placed at issue because he claimed lack of money as a reason for failing to seek medical treatment or refill prescriptions. (*See* Tr. 38–41.) The ALJ was allowed to ask about anything in Smith's medical records, which included Smith's past drug use. (*See* Tr. 429.) The ALJ was also allowed to ask Smith when and whether Smith used eye drops to treat his eyes. The ALJ can obtain information not evident in the medical records at the hearing, which is what the ALJ did. *See, e.g.*, 20 C.F.R. §§ 404.944, 404.950(c) (2017). The ALJ's determination that Smith's mental impairment did not restrict his ability to work is not evidence of his hostility. As fully discussed above, the

ALJ's determination as to Smith's mental limitation is supported by substantial evidence. *See supra* part 4.D.

Smith has not established that the ALJ harbored bias against him.

## 5. Conclusion

The record reflects that the ALJ's decision denying Social Security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's cross-motion for summary judgment be **GRANTED**, and Plaintiff's motion for summary judgment be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on July 11, 2019.

_____
Peter Bray
United States Magistrate Judge